UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALICIA CARRASCO, Plaintiff, | : | 24 Civ. 4265 (LGS) |
| -against- | : | **OPINION AND ORDER** |
| METROPOLITAN TRANSIT AUTHORITY et al., Defendants. | : | |

LORNA G. SCHOFIELD, District Judge:

Plaintiff Alicia Carrasco brings this employment discrimination action against Defendants Metropolitan Transportation Authority[1] ("MTA"), New York City Transit Authority ("NYCTA" and, together with MTA, "Transit"), Lindsey Seymour Gosin and Aliaa Abdelrahman (together with Gosin, the "Individual Defendants"). The operative Second Amended Complaint ("SAC") asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and the New York Labor Law ("NYLL"). Defendants move for summary judgment on all claims. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND

The following facts are drawn from the parties' Local Civil Rule 56.1 statements and related submissions.[2] The facts are undisputed or based on record evidence, drawing all

[1] Named as "Metropolitan Transit Authority" in the Second Amended Complaint.
[2] Defendants argue that Plaintiff's declaration should be stricken because it is longer than permitted under the Individual Rules, and portions are conclusory or unsupported. This motion is denied. Although Plaintiff should have sought leave to file an enlarged declaration, and future

reasonable inferences in favor of Plaintiff as the non-moving party. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).

**A. Background and Pre-2020 Events**

Plaintiff is an approximately 49-year-old Hispanic woman. Transit has employed Plaintiff since 1999. Plaintiff has primarily worked in Transit's Office of Labor Relations. She currently holds the title of Computer Associate III.

Plaintiff has applied unsuccessfully for several managerial positions at Transit. In 2013, she applied for the role of Manager of Labor Relations but was not selected. A non-Hispanic female was hired instead. Plaintiff then submitted a memorandum requesting an evaluation of her position and a salary increase. Transit's Vice President of Labor Relations informed Plaintiff that no management positions or promotion opportunities were available. After two meetings with the Vice President of Labor Relations, Plaintiff was assigned to report to Defendant Abdelrahman, who was a Director in the Office of Labor Relations. Over the period from 2009 to 2014 -- i.e., before and during this assignment -- Defendant Abdelrahman yelled at Plaintiff, treated her rudely and assigned Plaintiff tasks outside of her job description.

In October 2014, Plaintiff was promoted to Computer Associate III. The formal description for the role includes "[m]onitor[ing] compliance with service level agreements with outside vendors, [c]oordinat[ing] with management, IT personnel, and vendors as required to address issues" and performing supervisor duties "[i]n the temporary absence of the supervisor." Plaintiff's resume also states that the role involves maintaining calendars; "compiling, writing, and sending out Disciplinary Notifications to employees engaged in the disciplinary process";

---

noncompliance with the Individual Rules will result in documents being stricken, Plaintiff's declaration is reasonable under the circumstances. The portions of the declaration that Defendants identify as conclusory or unsupported are credited only to the extent permitted, viewing the record in the light most favorable to Plaintiff.

"investiga[ting] all instances involving employee arrest"; "serv[ing] as a Hearing Officer during disciplinary proceedings" and Union timekeeping functions.

**B. 2020 and 2022 Promotion Applications**

In December 2020, Plaintiff applied for the position of Director of Labor Relations, Field Operations. Transit hired Lloyd Bailey, a non-Hispanic male, for the role. Plaintiff attests that she was constantly called on to assist Bailey in his duties, including preparation for his disciplinary cases.

In January 2022, Plaintiff again applied for the Director of Labor Relations, Field Operations role. The posting for the role included the following qualifications:

- A Baccalaureate degree from an accredited college with a major in Labor Relations or a satisfactory equivalent. Eight (8) years relevant experience of which four (4) years must be in a managerial/supervisory capacity, or . . . a satisfactory equivalent of education and experience.
- Five (5) years of labor relations experience.

The posting stated that a Juris Doctorate may substitute for three years of labor relations and general experience. "[D]esired skills" for the position included a "[s]trong knowledge of public sector labor law."

Plaintiff was not selected for an interview. Transit's HR Department wrote that Plaintiff was not qualified for the role because she lacked "required managerial/supervisory experience." Defendant Gosin was selected for the role. The memorandum justifying her hire noted Gosin's experience as an attorney in the Administrative Trials and Hearing Division of Labor Relations and in the Transit Authority's Law Department. Neither the memorandum nor Gosin's resume reflects that she had previous managerial or supervisory experience. Once selected, Gosin became Plaintiff's supervisor.

Gosin treated Plaintiff with disdain but treated other non-Hispanic employees well. Plaintiff and a similarly situated Hispanic colleague "spent a significant amount of time explaining to . . . Gosin how to perform certain job functions she should have known how to complete."

**C. EEOC Charge and SIR Investigation**

On October 25, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and New York State Division of Human Rights ("NYSDHR," and when referring to the Charge of Discrimination, the "EEOC Charge"). Plaintiff filed an amended charge the next day. The EEOC Charge asserted discrimination on the basis of age, color, national origin and race, unequal pay and retaliation.

On January 12, 2023, Valerie Dabas, then a Senior Director at Transit, yelled at Plaintiff for "having visitors" at her desk. Plaintiff believes that this incident was racially motivated because she overheard Dabas say in August 2022 that she disliked Hispanics. One week later, on January 19, 2023, Plaintiff met with Gosin and Dabas, who informed Plaintiff that she was being removed from service pending an investigation of a leak of confidential information.

The MTA's Special Investigations Review department ("SIR") had initiated the leak investigation in November 2022. The leak involved a photograph posted on social media depicting a confidential Release Time Letter for a former union president. David Franceschini, who was the Deputy Chief of Collective Bargaining for the MTA's Labor and Employment Relations Department, believed that the photograph of the letter was taken by Plaintiff's computer because he believed that the reflections in the photograph matched those of Plaintiff's computer, as depicted in the image below.



*Dkt. No. 116-7, at MTA_000288 (depicting leaked document, left, and photograph of reflection of Plaintiff's computer screen, right, with arrows showing SIR's assessments of similarities).*

SIR agreed with Franceschini's assessment and initiated an investigation of Plaintiff. Plaintiff denied responsibility for the leak or awareness of the leaked document.

While Plaintiff was removed from service during the investigation, she was moved to a different floor than her Office of Labor Relations colleagues, had no job responsibilities and had her computer and phone access revoked. Plaintiff was unable to access Transit databases, including her own payroll information, during that time. During Plaintiff's suspension, Defendant Gosin remained Plaintiff's supervisor until December 2023, when Gosin transitioned out of the Office of Labor Relations. From December 2023 until September 2024, Plaintiff reported to Defendant Abdelrahman.

During the investigation, on March 3, 2023, Plaintiff filed a second Amended Charge of Discrimination with the EEOC and NYSDHR. Later, on May 12, 2023, Plaintiff filed a Complaint directly with the New York State Division of Human Rights ("NYSDHR Complaint")

concerning the January 12, 2023, desk incident; January 19, 2023, suspension and SIR investigation. Plaintiff filed this lawsuit on June 4, 2024.

One month later, in July 2024, SIR issued a report summarizing its findings (the "SIR Report"). The SIR Report concluded that the leak of confidential information had originated from Plaintiff's work computer, that Plaintiff had "engaged in gross misconduct for her failure to secure her work computer and her failure to secure confidential information" and that Plaintiff had violated other policies, including policies governing her relationship and marriage to a union representative. The SIR Report recommended that Plaintiff receive a thirty-day suspension for these violations, and Plaintiff received a thirty-day suspension on August 29, 2024. Plaintiff submitted a rebuttal on September 5, 2024, taking issue with the SIR Report's findings. Later that month, on September 27, 2024, Plaintiff's suspension was reduced to twenty days.

After Plaintiff served the suspension, she was transferred to the Yukon Bus Depot on Staten Island. She is the only Computer Associate at the Bus Depot, and no managers work there. Plaintiff has the same title, pay and benefits as she did before her suspension.

**D. Procedural History**

Defendants previously moved to dismiss the SAC's city and state law claims. The July 15, 2025, Opinion and Order (the "MTD Opinion") granted in part and denied in part the motion. *Carrasco v. Metro. Transit Auth.*, No. 24 Civ. 4265, 2025 WL 1939052, at *7 (S.D.N.Y. July 15, 2025). After the motion, the surviving claims were the discrimination and retaliation claims under Title VII, the NYCHRL and NYSHRL; the NYLL claims for retaliation on or after June 4, 2022 and the claim under the New York Equal Pay Act. *See id.* at *7. Defendants now move for summary judgment on those claims.

## II. STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."[3] *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." *See* Fed. R. Civ. P. 56(c)(1)(A). In considering Defendants' motion for summary judgment, the Court is "required to accept all sworn statements by [Plaintiff] as to matters on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). Courts must also "disregard all evidence favorable to [Defendants] that the jury is not required to believe," that is, "give

[3] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

credence to the evidence favoring [Plaintiff] as well as that evidence supporting [Defendants] that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F.3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).

As the Seventh Circuit famously stated: "Judges are not like pigs, hunting for truffles buried in the record." *Albrechtsen v. Bd. of Regents of Univ. of Wis. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002). The district court is not required to "conduct an exhaustive search of the entire record before ruling on a motion for summary judgment." *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002); *accord Green v. Mount Sinai Health Sys., Inc.*, No. 17 Civ. 3999, 2019 WL 4392691, at *3 (S.D.N.Y. Sep. 12, 2019), *aff'd*, 826 F. App'x 124 (2d Cir. 2020).

### B. *McDonnell Douglas* Framework

Title VII "claims are governed at the summary judgment stage by the burden-shifting analysis first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). The *McDonnell Douglas* framework also applies to claims for retaliation brought under the NYSHRL and NYCHRL, *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025) (NYSHRL and NYCHRL), and may apply to claims for discrimination under the NYCHRL and NYSHRL, *Campbell v. City of New York*, 209 N.Y.S.3d 418, 419 (1st Dep't 2024) (analyzing NYCHRL claim under *McDonnell Douglas* framework and "somewhat more flexible mixed-motive" framework).

Under the *McDonnell Douglas* framework:

> First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff has established a *prima facie* case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the disparate treatment. If the employer articulates such a reason for its actions, the burden

> shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination.

*Buon v. Spindler*, 65 F.4th 64, 78-79 (2d Cir. 2023).

## III. DISCUSSION

### A. Federal Claims

The SAC alleges that Plaintiff faced discrimination, a hostile work environment and retaliation due to her gender, age, race, and national origin in violation of Title VII. Defendants' motion for summary judgment is granted as to the First and Second Causes of Action for Disparate Treatment and Disparate Impact, respectively. Defendants' motion is granted in part and denied in part as to the Sixth Cause of Action for Retaliation. Defendants' motion is denied as moot to the extent it seeks summary judgment on Title VII claims against the Individual Defendants because the SAC asserts no such claims. The surviving federal claim is for retaliation based on the SIR investigation, Plaintiff's suspensions pending and following the SIR investigation and Plaintiff's transfer to Staten Island.

#### 1. Statute of Limitations

Summary judgment is granted to Defendants on the federal claims for acts occurring prior to December 9, 2021, with the exception of the claims for hostile work environment and disparate pay (which, as discussed below, are dismissed on the merits).

A charge of discrimination filed with both the EEOC and a state agency must be brought within 300 days of the challenged practice. 42 U.S.C. § 2000e-5(e)(1); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015). However, under the "continuing violation" doctrine, "claims that are composed of a series of separate acts that collectively constitute one unlawful practice" are timely if any act that is part of "the singular unlawful practice" occurs within the limitations period. *Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74,

87-88 (2d Cir. 2024). The "doctrine does not apply to discrete acts of discrimination or retaliation that occur outside the statutory time period, even if other related acts of discrimination occurred within the statutory time period." *Tassy v. Buttigieg*, 51 F.4th 521, 532 (2d Cir. 2022).

Defendants assert that the federal claims are untimely to the extent they are premised on events that occurred prior to December 9, 2021 -- 300 days before Plaintiff filed her first EEOC Charge. Several instances of the alleged misconduct before this date -- for example, the decisions not to promote Plaintiff in 2013 and 2020 -- are discrete acts not subject to the continuing violation doctrine. *See King v. Aramark Servs. Inc.*, 96 F.4th 546, 560 (2d Cir. 2024) (stating that a plaintiff "cannot . . . lodge a . . . claim for a discrete failure to promote if the promotion denial fell outside the limitations period"). Contrary to Plaintiff's argument, no reasonable jury could find that Defendants' failures to promote Plaintiff constitute a continuing policy, as opposed to "distinct events" regarding different promotions Plaintiff sought. *See Fitchett v. City of New York*, No. 18 Civ. 8144, 2021 WL 964972, at *10 (S.D.N.Y. Mar. 15, 2021). The continuing violation doctrine does not revive these otherwise-untimely claims for discrimination or retaliation.

To the extent the otherwise-untimely claims for hostile work environment and pay disparity are subject to the continuing violation doctrine, these claims fail on the merits for the reasons discussed below. *See, e.g.*, *Olivieri*, 112 F.4th at 88 (hostile work environment claim may be continuing violation); *Ndugga v. Bloomberg L.P.*, No. 20 Civ. 7464, 2023 WL 4744184, at *4 (S.D.N.Y. July 25, 2023) (stating that "continued pay-discrimination" within relevant class period was timely).

**2. Disparate Treatment (First Cause of Action)**

Defendants' motion for summary judgment on the disparate treatment claims under Title VII is granted. The timely claims for disparate treatment are (1) the 2022 hiring of Defendant

Gosin for the Director of Labor Relations position; (2) disparate compensation; (3) hostile work environment; (4) shifting of job duties and (5) the SIR investigation and Plaintiff's eventual transfer to Staten Island.

To establish a prima facie case of discrimination, a plaintiff must show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 173 (2024). "[A] plaintiff's burden of establishing a *prima facie* case is not onerous." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 270 (2d Cir. 2023). "[T]he ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by an impermissible reason, i.e., a discriminatory reason." *Vega*, 801 F.3d at 87. To prevail at trial, a plaintiff must show that a protected characteristic "was at least 'a motivating factor' in Defendants' [challenged conduct], even if 'other factors also motivated'" the conduct. *Krause v. Kelahan*, 161 F.4th 66, 76 (2d Cir. 2025) (quoting 42 U.S.C. § 2000e-2(m)).

**a. Failure to Promote in 2022**

Summary judgment is granted to Defendants on the claim for failure to promote in 2022 because no reasonable jury could conclude that Transit's decision not to promote Plaintiff to Director of Labor Relations, Field Operations was "motivated at least in part by . . . a discriminatory reason." *Vega*, 801 F.3d at 87.

**i. Prima Facie Case**

At step one of *McDonnell Douglas*, the record supports the "minimal" burden required to establish a prima facie case for failure to promote in 2022. *Banks*, 81 F.4th at 270. To establish

a prima facie case for failure to promote, a plaintiff must show that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications," *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998); *Elliott v. Avangrid Mgmt. Co.*, No. 25-2102, 2026 WL 1799377, at *1 (2d Cir. June 23, 2026) (summary order), or that the position was filled "by someone not a member of [her] protected class," *de la Cruz v. N.Y.C. Hum. Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996); *Samaan v. City of New York*, No. 18 Civ. 9221, 2023 WL 2499263, at *13 (S.D.N.Y. Mar. 14, 2023).

Defendants argue that the record does not establish the second element -- that Plaintiff was qualified for the role -- or the fourth element -- that the decision not to promote supports an inference of discrimination. These arguments are unavailing. For the second element, although Plaintiff did not have managerial/supervisory experience, which was listed as a requirement on the job posting, her tenure in the Office of Labor Relations is plausibly "a satisfactory equivalent of education and experience" for purposes of a prima facie case. For the fourth element, an inference of discrimination, Defendant Gosin, who is Black and not a member of Plaintiff's protected class, was selected for the role. *See Samaan*, 2023 WL 2499263, at *13 (stating that inference of discrimination supported when position filled "by someone not a member of plaintiff's protected class"). The record establishes a prima facie case at step one of *McDonnell Douglas*.

**ii. Pretext**

At the second step of the *McDonnell Douglas* framework, Defendants have proffered a legitimate, nondiscriminatory reason for the decision not to hire Plaintiff -- namely, that Gosin

was more qualified for the role than Plaintiff, as Gosin is a licensed attorney who has handled a significant caseload and advised Transit management across multiple divisions. Plaintiff's resume, to the contrary, does not reflect a similar level of "desired skills" for the position such as "[s]trong knowledge of public sector labor law." Additionally, Transit's HR Department deemed Plaintiff not qualified because she lacked managerial/supervisory experience.

At the third step of the *McDonnell Douglas* framework, Plaintiff argues that Defendants' proffered reasons are pretextual because Gosin's resume similarly does not reflect any managerial/supervisory experience. While "inconsistent employer explanations" may suffice to show pretext at summary judgment, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013), here, the record evidence does not support that "the asserted pretextual reasons were intended to mask [race] discrimination," *see Schnabel v. Abramson*, 232 F.3d 83, 88 (2d Cir. 2000); *accord Allen v. Padilla*, No. 25-623, 2026 WL 123234, at *2 (2d Cir. Jan. 16, 2026) (summary order).

To support an inference of discrimination, Plaintiff points to the fact that Gosin, a Black woman, is not a member of Plaintiff's protected class. Plaintiff's declaration attests that, of the five candidates interviewed for the role, none was Hispanic. However, no record evidence supports an inference that discrimination played a role in Transit's selection of Gosin beyond "the minimal proof required to state a prima facie case." *See Schnabel*, 232 F.3d at 88; *Allen*, 2026 WL 123234, at *2. Also, Plaintiff does not dispute that multiple Hispanic individuals have been promoted to Director of Labor Relations or Manager of Labor Relations roles since Plaintiff's 2022 application. When, as here, a plaintiff "seeks to infer discrimination solely from" disparate treatment "and from Defendants' pretextual rationale for the" failure to promote,

but lacks evidence of animus, summary judgment is appropriate. *See Hatzimihalis v. SMBC Nikko Sec. Am., Inc.*, No. 20 Civ. 8037, 2023 WL 3764823, at *12 (S.D.N.Y. June 1, 2023).

**b. Disparate Pay**

Defendants are granted summary judgment on the federal claim for disparate pay because the record evidence does not support a prima facie case at step one of *McDonnell Douglas*.

"Title VII makes actionable *any* form of [protected class-based] compensation discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019). To establish a prima facie case under a theory of unequal pay for equal work (which Plaintiff appears to assert), the plaintiff must show "(1) she is a member of a protected class . . . [,] (2) she was paid less than non-members of her class for work requiring substantially the same responsibility" and (3) discriminatory animus. *Belfi v. Prendergast*, 191 F.3d 129, 139 (2d Cir. 1999); *Polite v. VIP Cmty. Servs.*, No. 20 Civ. 7631, 2022 WL 9847075, at *3 (S.D.N.Y. Oct. 17, 2022). Although the substantial equivalence of two positions is generally a question of fact, *Jamilik v. Yale Univ.*, 362 F. App'x 148, 150 (2d Cir. 2009) (summary order), a plaintiff must still "adduce evidence from which a reasonable jury could conclude that she performed equal work on jobs requiring equal skill, effort, and responsibility" as her comparators, *Black v. Buffalo Meat Serv., Inc.*, No. 21-1468, 2022 WL 2902693, at *4 (2d Cir. July 22, 2022) (summary order).

The SAC asserts a claim that Plaintiff is subject to discriminatory pay practices in violation of Title VII -- specifically, that Defendants "diminish[] Plaintiff's qualifications and job duties as 'support staff.'" Plaintiff's declaration further asserts that she has been "overlooked for raises . . . that were given to younger and/or non-Hispanic and/or male peers"; that, in October 2014, Plaintiff received a ten percent raise while other, non-Hispanic employees consistently received raises between eighteen and twenty percent and that Plaintiff performed the

duties and responsibilities of her supervisors without additional compensation. Plaintiff does not identify these non-Hispanic comparators, which is insufficient to survive summary judgment. *See Collymore v. City of New York*, No. 23-1304, 2025 WL 1323784, at *3 (2d Cir. May 7, 2025) (summary order) (holding, under analogous NYSHRL standard, that claim failed that provided "no details about the alleged comparators' qualifications [or] responsibilities").

With respect to her state law Equal Pay Act claim, Plaintiff asserts that Lloyd Bailey, who was her supervisor as Director of Labor Relations from approximately 2020 to 2022, is a comparator who received greater pay for performing similar work. To the extent this argument applies to the Title VII claim, the argument is unavailing. The record does not contain any information about the work that Bailey performed as Director of Labor Relations. Transit's job posting for the role states that the Director of Labor Relations will, for example, "represent the Divisions at pre-arbitration hearings" and "advise all levels of management within the Division on employee availability issues, the drafting of disciplinary charges and the proper responses to grievances" -- most of which are not functions that Plaintiff even arguably describes herself as performing. The Title VII claim for disparate pay is dismissed.

**c. Hostile Work Environment**

Defendants' motion for summary judgment on the Title VII hostile work environment claim is granted in full. An actionable hostile work environment exists only when discriminatory intimidation, ridicule or insult is (1) sufficiently severe or pervasive to alter the conditions of employment and (2) there is a specific basis to impute the conduct to the employer. *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020). The misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive. *See Moll v. Telesector Res. Grp.,*

*Inc.*, 94 F.4th 218, 228-29 (2d Cir. 2024). Courts assess "*all* the circumstances," including frequency, severity, whether conduct was threatening or humiliating and whether it interfered with work. *Id*. at 229. Hostile work environment claims are not analyzed under the *McDonnell Douglas* burden-shifting framework. *Cadet v. Macy's, Inc.*, No. 22 Civ. 7406, 2026 WL 1998595, at *5 n.6 (S.D.N.Y. July 10, 2026) (collecting cases).

On the record provided, no reasonable jury could find that Plaintiff was subjected to a hostile work environment. First, in opposing summary judgment on this claim, the only factual support Plaintiff cites is the entirety of her ninety-one-paragraph declaration and Local Civil Rule 56.1 Counterstatement. This argument does not satisfy Rule 56's requirement that a party opposing summary judgment "cit[e] to particular parts of materials in the record" to demonstrate a genuinely disputed fact. Fed. R. Civ. P. 56(c)(1)(A).

Second, even considering the entirety of Plaintiff's submissions, no evidence supports a finding that any hostility was motivated by Plaintiff's protected characteristics. For instance, Plaintiff's declaration asserts that, in the five-year period from 2009 to 2014, Defendant Abdelrahman yelled at Plaintiff, treated her rudely and treated her as "the help"; that Defendant Gosin treated her with disdain and that, in January 2023, Valerie Dabas approached Plaintiff's desk in a threatening manner and screamed at Plaintiff for having visitors at her desk.

With respect to the desk incident, although Plaintiff reports that she, at one point, overheard Dabas say that she did not like Hispanic people, this is a "stray remark" that, standing alone and even in conjunction with the desk incident, does not create an objectively hostile work environment. *See Rasmy*, 952 F.3d at 389 (stating that, although "the stray remarks doctrine is by no means dispositive," hostile work environment claims must be supported by "sufficiently pervasive or chronic" conduct).

The other allegations supporting a hostile work environment claim -- that Abdelrahman and Gosin mistreated Plaintiff -- are too vague to support any reasonable inference that the asserted conduct was based on Plaintiff's protected characteristics. *See Rys v. Davis*, No. 25-857, 2026 WL 904990, at *4 (2d Cir. Apr. 2, 2026) (summary order) (affirming grant of summary judgment for defendant on hostile work environment claim based only on conclusory allegations). The hostile work environment claim is dismissed.

**d. Remaining Theories of Discrimination**

The record evidence fails to establish a prima facie case at step one of *McDonnell Douglas* with respect to the remaining claims for disparate treatment -- namely, shifting of job duties, the SIR investigation and Plaintiff's eventual transfer to Staten Island. On the record provided as construed in the light most favorable to Plaintiff and as described in the background section above, these circumstances do not give rise to an inference of discrimination. *See Bart*, 96 F.4th at 570. The First Cause of Action is dismissed.

**3. Disparate Impact (Second Cause of Action)**

Summary judgment is granted on the SAC's Title VII claim for disparate impact. The evidence is insufficient to establish a prima facie case at step one of *McDonnell Douglas*.

To prevail on a disparate impact claim, "a plaintiff must show that the employer 'uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin.'" *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012) (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)). To make a prima facie showing of disparate impact, a plaintiff must "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two," i.e., a plaintiff must identify a practice or policy that is challenged and show that it impacts differently employees with protected status versus employees without that status. *Mandala v. NTT Data,*

*Inc.*, 975 F.3d 202, 207 (2d Cir. 2020). Unlike a disparate treatment claim, "a disparate impact claim does not require the plaintiff to show that the defendant *intended* to discriminate against a particular group." *Id.*

The record does not support a prima facie showing of disparate impact because Plaintiff has not identified any specific employment practice or policy that causes a disparate impact. In support of the claim, Plaintiff cites paragraphs of her declaration referencing her 2013 application to the Manager of Labor Relations Role, Abdelrahman's mistreatment of Plaintiff from 2009-2014, a raise that Plaintiff received in 2014, the suspension relating to the SIR investigation and a statement that Plaintiff has been repeatedly "overlooked for raises, promotions, favorable assignments, professional growth and opportunities that were given to younger and/or non-Hispanic and/or male peers." These examples are only "anecdotal evidence," not evidence showing disparate outcomes on "the entire population affected by the challenged practice." *See Gittens-Bridges v. City of New York*, No. 19 Civ. 272, 2022 WL 954462, at *17 (S.D.N.Y. Mar. 30, 2022), *aff'd*, No. 22-810, 2023 WL 8825342 (2d Cir. Dec. 21, 2023); *see Mandala*, 975 F.3d at 209 (stating that, to prove a claim of disparate impact, "plaintiffs typically rely on statistical evidence to show a disparity in outcome between groups"). The Second Cause of Action is dismissed.

**4. Retaliation (Sixth Cause of Action)**

Plaintiff's retaliation claim under Title VII survives summary judgment. Title VII bars an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). As with discrimination claims, retaliation claims are assessed "using the burden-shifting framework from *McDonnell Douglas*." *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d

Cir. 2015). "To make out a prima facie case of retaliation [under Title VII], a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "To establish causation under Title VII, a plaintiff must show that retaliation was the 'but-for' reason for the adverse employment action." *Edelman*, 141 F.4th at 51. The timely theories of retaliation are (1) Plaintiff's removal from service pending the SIR investigation and the ultimate results of that investigation; (2) her transfer to Staten Island; (3) the January 12, 2023, desk incident and (4) Plaintiff's assignment to report to Abdelrahman as her supervisor.

**a. SIR Investigation and Transfer**

Summary judgment is denied as to the SIR investigation and Plaintiff's eventual suspension and transfer to Staten Island because a reasonable jury could find that these actions were taken in retaliation for Plaintiff's EEOC charges.

**i. Prima Facie Case**

With respect to the prima facie case, Defendants argue that the record does not establish the third element -- adverse employment action -- and the fourth element -- causation. These arguments are incorrect. The record evidence supports both elements for purposes of a prima facie case.

An employment action is "adverse" under the third element of a prima facie case for retaliation if the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 179 (2d Cir. 2023). For purposes of a prima facie case, the SIR investigation, Plaintiff's suspension during

the investigation, the twenty-day suspension post-investigation and transfer to Staten Island would dissuade a reasonable worker from making a charge of discrimination. *See id.*

Defendants' contrary arguments are unavailing. First, Defendants argue that "administrative leave with pay during the pendency of an investigation does not, without more, constitute an adverse employment action." *Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006). However, "[p]aid suspension during an investigation could thus potentially be adverse if the employer takes actions beyond an employee's normal exposure to disciplinary policies." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

Here, Plaintiff's sworn declaration states that, in addition to being suspended from service, she was transferred to a different floor, denied computer and phone access and denied access to personal information including payroll documents. Her declaration also asserts that these steps depart from Transit's typical policies. This record evidence supports that Plaintiff's suspension pending the SIR investigation was materially adverse. *See id.* Defendants argue that these steps were necessary and typical given the nature of the document leak allegations against Plaintiff. However, the statement Defendants cite in support -- deposition testimony from Defendant Abdelrahman that "giving access to the systems for Labor Relations information would not have been appropriate pending this investigation" -- does not explain why Plaintiff did not have access to personal information or was transferred to a different floor. Nor does that testimony support that Transit has a general policy of restricting computer access during document leak investigations.

Second, Defendants argue that Plaintiff's transfer to Staten Island is not adverse because it is a "purely lateral transfer" and Plaintiff receives the same pay and benefits. This argument is unpersuasive first because a lateral transfer may be retaliatory. *See Moll*, 94 F.4th at 245.

Second, on the facts of this case, the evidence supports the reasonable inference that Plaintiff's transfer to a different location away from her colleagues would dissuade a reasonable worker from making a charge of discrimination. The challenged actions are materially adverse for the purpose of a prima facie case.

For causation, Defendants argue that Franceschini, who raised the leak to SIR, and the Chief Officer of SIR both attested that neither they nor anyone else at SIR had knowledge of Plaintiff's EEOC charges until after the investigation commenced. This argument does not address Plaintiff's Notice of Disciplinary Charges or reassignment to Staten Island. Also, for purposes of establishing a prima facie case, a plaintiff may withstand summary judgment by "showing that the protected activity was closely followed in time by the adverse employment action." *Banks*, 81 F.4th at 277. The below timeline suffices to establish causation for a prima face case:

- October 25, 2022: Plaintiff filed EEOC Charge (protected activity);
- January 19, 2023: Plaintiff removed from service pending SIR investigation (adverse action);
- June 4, 2024: Plaintiff commenced lawsuit (protected activity);
- August 29, 2024: Plaintiff received Notice of Disciplinary Charges (adverse action);
- October 2024: Plaintiff reassigned to Staten Island (adverse action).

The Second Circuit has repeatedly found triable causation issues based on similar or longer intervals between protected activity and adverse action. *See id.* at 278 (six months); *Rasmy*, 952 F.3d at 391 (five months); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 555 (2d Cir. 2001) (four months).

**ii. Pretext**

Transit has articulated a non-retaliatory reason for the SIR investigation and suspension -- Plaintiff's alleged involvement in a document leak. However, the record supports a reasonable inference that this reason is pretext for retaliation. Transit has not articulated a non-retaliatory reason for Plaintiff's transfer to Staten Island.

First, the temporal proximity described above supports a finding of pretext. Although temporal proximity alone cannot support an inference of pretext, temporal proximity combined with other factors may support pretext. *See Zann Kwan*, 737 F.3d at 847.

Second, a reasonable jury could conclude that there were discrepancies between Transit's treatment of Plaintiff and its general policies regarding employees suspended pending an investigation, as discussed above. These discrepancies support a reasonable inference that retaliation was a but-for cause of Defendants' conduct. *See id.*

Third, a reasonable jury would not be required to credit the SIR investigation's findings. Specifically, in rebutting the SIR investigation charges, Plaintiff argued that the SIR investigation was deficient because the alleged recipient of the confidential document was not interviewed. Also, a reasonable jury could disagree with the SIR Report's conclusion that the photograph of the unauthorized document matched the photograph of Plaintiff's workstation.

A reasonable jury could determine that the SIR investigation, Plaintiff's suspensions pending and following the investigation and Plaintiff's transfer to Staten Island were retaliation for Plaintiff's protected conduct.

**b. Remaining Theories of Retaliation**

Plaintiff argues that other timely theories of retaliation -- including the January 12, 2023, incident in which Valerie Dabas yelled at Plaintiff for having visitors at her desk and Plaintiff's

temporary assignment to the supervision of Defendant Abdelrahman -- also support a claim for retaliation. To the extent Plaintiff asserts these events to be independent bases of liability, summary judgment is granted because the record does not support that these actions are adverse for the purpose of a prima facie case at step one of *McDonnell Douglas*.

"[C]riticism, verbal reprimands, and notices of potential discipline, by themselves, do not qualify as adverse employment actions." *Stewart v. City of New York*, No. 22-2775, 2023 WL 6970127, at *2 (2d Cir. Oct. 23, 2023) (summary order) (citing *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72 (2d Cir. 2019)). The desk incident is a verbal reprimand insufficient to support a claim for retaliation. The record does not support an inference that Plaintiff's temporary assignment to Abdelrahman adversely affected her or would dissuade a reasonable employee from making a charge of discrimination. Summary judgment is granted on these claims to the extent they are asserted as independent bases for liability. The Sixth Cause of Action survives as it relates to the SIR investigation, Plaintiff's suspensions pending and following the investigation and Plaintiff's transfer to Staten Island as retaliation for Plaintiff's protected conduct.

**B. City and State Claims**

The SAC asserts claims for disparate treatment, disparate impact, retaliation and unequal pay under city and state law. For the reasons below, the surviving claims are (1) the NYCHRL and NYSHRL claims for disparate treatment based on the 2022 selection of Gosin as Director of Labor Relations against the Transit Defendants (and, for the NYCHRL, Defendant Abdelrahman) and (2) the NYCHRL, NYSHRL and NYLL claims for retaliation against the Transit Defendants (and, for the NYCHRL and NYLL, the Individual Defendants). Summary judgment is otherwise granted to Defendants.

The MTD Opinion dismissed the NYSHRL and NYCHRL claims relating to the January 12, 2023, desk incident, the SIR investigation and Plaintiff's suspension pending that

investigation for lack of subject matter jurisdiction because those actions were the subject of Plaintiff's NYSDHR Complaint. *Carrasco*, 2025 WL 1939052, at *7. That opinion did not dismiss claims relating to conduct that was not the subject of Plaintiff's NYSDHR Complaint -- including incidents that occurred after Plaintiff filed the NYSDHR Complaint on May 12, 2023, such as Plaintiff's suspension following the SIR investigation and Plaintiff's transfer to Staten Island. *Id.* at *3.

**1. Statute of Limitations**

Plaintiff's NYSHRL and NYCHRL claims are timely to the extent they relate to Defendants' conduct on or after January 24, 2020, and summary judgment is otherwise granted on these claims as time-barred. NYSHRL and NYCHRL claims are subject to a three-year statute of limitations. CPLR 214(2); N.Y. Exec. Law § 297(5); N.Y.C. Admin. Code § 8-502(d). The limitations period is tolled by filing a charge of discrimination with the EEOC while the claim is pending in the administrative process. *Gabin v. Greenwich House, Inc.*, 177 N.Y.S.3d 582, 583 (1st Dep't 2022). Unlike the federal claims, a discrimination claim under state and city law is timely if a plaintiff shows "a single continuing pattern of unlawful conduct extending into the limitations period immediately preceding the filing of the complaint." *Crawford v. Am. Broad. Co.*, 189 N.Y.S.3d 184, 186 (1st Dep't 2023). The continuing violations doctrine applies even if the claims are based on discrete acts, such as a failure to promote. *St. Jean Jeudy v. City of New York*, 37 N.Y.S.3d 498, 500 (1st Dep't 2016) (NYCHRL).

The limitations period was tolled 497 days from October 25, 2022 (when Plaintiff filed EEOC Charges) to March 5, 2024 (when EEOC issued its right-to-sue notice). The NYSHRL and NYCHRL claims are thus timely to the extent they relate to Defendants' conduct on or after January 24, 2020. Contrary to Plaintiff's argument, it is not relevant that the statute of limitations was tolled during the pendency of Plaintiff's NYSDHR Complaint filed May 12,

2023, as the Court lacks subject matter jurisdiction over state law claims relating to facts asserted in that complaint. *Carrasco*, 2025 WL 1939052, at *7 (dismissing claims asserted in NYSDHR Complaint pursuant to election of remedies doctrine).

Plaintiff argues that the continuing violations doctrine renders all of her claims timely. Specifically, Plaintiff argues that she "was subjected to a seamless process over time of ignoring her and shunting her candidacy aside based on racial gender and age animus[] and in retaliation for her discrimination complaints beginning in 2016, resulting in a hostile work environment" (internal quotation marks and alterations omitted). However, on this record, no reasonable jury could find that Plaintiff's timely claims for failure to promote in 2020 and 2022, or for retaliation, are part of the same policy or practice as the untimely claims -- for instance, mistreatment by Abdelrahman from 2009 to 2014 or failure to promote in 2013. As with the federal claims, to the extent the claims for hostile work environment and disparate pay are subject to the continuing violation doctrine, these claims fail on the merits.

**2. NYSHRL & NYCHRL**

The NYSHRL and NYCHRL claims are analyzed together under the standard historically applied under the NYCHRL. The NYSHRL proscribes discrimination "because of an individual's age, race . . . color, national origin . . . [or] sex"; prohibits subjecting an employee to a hostile work environment on those bases and forbids retaliation for opposing or complaining about such practices. N.Y. Exec. Law § 296(1), (7). The NYCHRL similarly forbids discrimination and retaliation based on protected status. N.Y.C. Admin. Code § 8-107(1)(a), (7). Courts interpret the NYCHRL "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Albunio v. City of New York*, 947 N.E.2d 135, 137 (N.Y. 2011). The standards of Title VII serve as a "*floor* below which the City's Human Rights

law cannot fall." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013).

In 2019, the NYSHRL was amended to "be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed." N.Y. Exec. Law § 300. The New York Court of Appeals has interpreted the statutes together and "broadly" in light of this "mandate." *See Syeed v. Bloomberg L.P.*, 235 N.E.3d 351, 354 (N.Y. 2024); *accord Edelman*, 141 F.4th at 45 n.9. At least one court of the Appellate Division has concluded that "the NYSHRL now aligns with the standards of the" NYCHRL, *Wright v. White Plains Hosp. Med. Ctr.*, 232 N.Y.S.3d 594, 595-96 (2d Dep't 2025), and non-binding Second Circuit summary orders have analyzed such claims together, *see, e.g.*, *Brown v. Montefiore Health Sys., Inc.*, No. 24-3078, 2025 WL 2985389, at *2 & n.4 (2d Cir. Oct. 23, 2025) (summary order); *Gehlaut v. N.Y.C. Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sep. 8, 2025) (summary order). Plaintiff's NYCHRL and NYSHRL claims are thus analyzed together under the standards historically applicable to the NYCHRL.

**a. Disparate Treatment (Third and Fifth Causes of Action)**

Applying the more liberal standards of the NYSHRL and NYCHRL, the claims for disparate treatment survive to the extent they are based on Plaintiff's 2022 application to the Director of Labor Relations position, and summary judgment is otherwise granted to Defendants.

Under the NYCHRL and amended NYSHRL, to demonstrate discrimination Plaintiff must show she was "treated less well than other employees because of her" protected characteristics. *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 39 (1st Dep't 2009) (NYCHRL); *Valerio v. Metro. Transp. Auth.*, No. 24-1614, 2025 WL 686028, at *4 (2d Cir.

Mar. 4, 2025) (summary order) (NYCHRL and NYSHRL). "[S]ummary judgment is appropriate if the record establishes as a matter of law that discrimination . . . played no role in the defendant's actions." *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 76 (2d Cir. 2015) (NYCHRL). Courts may apply the *McDonnell Douglas* analysis while keeping these more liberal standards in mind. *See Spires v. MetLife Grp., Inc.*, No. 21-2014, 2023 WL 545350, at *1 (2d Cir. Jan. 27, 2023) (summary order) ("NYCHRL claims are first analyzed under the familiar *McDonnell Douglas* burden-shifting framework . . . . Under the NYCHRL, unlawful discrimination must play no role in an employment decision.").

**i. Failure to Promote in 2022**

The claims for failure to promote for the Director of Labor Relations, Field Operations role under the NYSHRL and NYCHRL survive, unlike the Title VII claim.

As with the Title VII claim, the record supports a prima facie case at step one of *McDonnell Douglas*. At the second step, Defendant offers the legitimate, nondiscriminatory reason that Gosin was more qualified for the role than Plaintiff, who lacked required managerial/supervisory experience. Unlike the Title VII claim, in light of the liberal standards applicable to the NYCHRL and amended NYSHRL, and drawing inferences in favor of Plaintiff as the non-moving party, this claim survives because the record supports a reasonable inference that Defendants' proffered justifications for not promoting Plaintiff are pretextual.

"Once there is some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete, a host of determinations properly made only by a jury come into play, such as whether a false explanation constitutes evidence of consciousness of guilt, an attempt to coverup the alleged discriminatory conduct, or an improper discriminatory motive co-existing with other legitimate reasons." *Bennett v. Health Mgmt. Sys., Inc.*, 936 N.Y.S.2d 112,

123 (1st Dep't 2011) (NYCHRL); *Richmond v. Montefiore Med. Ctr.*, No. 21 Civ. 8700, 2023 WL 6216271, at *27 (S.D.N.Y. Sep. 25, 2023) (NYCHRL and NYSHRL).

Here, Transit's HR Department deemed Plaintiff not qualified because she lacked managerial/supervisory experience, but the record does not show that Defendant Gosin, whom Transit hired for the role, had such experience. When, as here, the record supports a reasonable inference that an employer's proffered justification is pretextual, "[o]nly 'in the most extreme and unusual circumstances'" should summary judgment be granted on NYSHRL and NYCHRL claims. *See Hatzimihalis*, 2023 WL 3764823, at *13 (quoting *Bennett*, 936 N.Y.S.2d at 123).

Defendants argue that the Court lacks subject matter jurisdiction over this portion of the retaliation claims because it formed part of Plaintiff's NYSDHR Complaint. Specifically, Defendants cite the NYSDHR's notes from phone calls with Plaintiff, which reflect that Plaintiff discussed her promotion applications with the department. The MTD Opinion previously rejected this argument. Plaintiff's NYSDHR Complaint described the January 12, 2023, desk incident, the SIR investigation and Plaintiff's suspension during that investigation's pendency. The MTD Opinion dismissed claims based on those events. *Carrasco*, 2025 WL 1939052, at *3. That "Plaintiff did refer generally" "in interviews with the NYSDHR" to other discriminatory practices does not deprive the Court of subject matter jurisdiction over them. *See id.*

**ii. Disparate Pay**

Defendants are granted summary judgment as to the NYSHRL and NYCHRL claims for disparate pay because, as with the federal claims, the evidence does not support a prima facie case at step one of *McDonnell Douglas*. Under the NYCHRL and amended NYSHRL, a plaintiff and comparator must be "similarly situated in all material respects." *Etienne v. MTA N.Y.C. Transit Auth.*, 205 N.Y.S.3d 2, 4 (1st Dep't 2024). As with the federal claim, even

construing the record liberally, the record does not permit an inference that Plaintiff is "similarly situated in all material respects" to her asserted comparators. *Id.*

**iii. Failure to Promote in 2020**

Summary judgment is granted to Defendants on the failure to promote claim arising from Plaintiff's 2020 application to the Director of Labor Relations position; on this record, no reasonable jury could find that discrimination played any role in the action. Plaintiff's only evidence of discrimination is that Bailey, who was selected for the role, is a non-Hispanic male, and Plaintiff had to assist him once he was hired. Assuming that these facts establish a prima facie case, Defendants argue, as with the 2022 failure to promote claim, that Bailey was more qualified than Plaintiff for the role. The record does not reflect any evidence that this reason is pretextual or that discrimination played any role in the decision to hire Bailey -- particularly when Plaintiff did not have managerial/supervisory experience, which the job posting listed as a requirement. *See Mezinev v. Donald Smith & Co.*, 252 N.Y.S.3d 147, 148-49 (1st Dep't 2026) (granting summary judgment to defendant when the only evidence in support of claim was "legally insufficient" to support an inference of discrimination).

**iv. Hostile Work Environment**

Defendants are granted summary judgment on the NYSHRL and NYCHRL claims for hostile work environment because no reasonable jury could find that Plaintiff was treated less well because of her protected characteristics. To establish a claim of hostile work environment under the NYCHRL and amended NYSHRL, a plaintiff need only establish that she was "treated less well than other employees because of [a protected characteristic]." *Williams*, 872 N.Y.S.2d at 39 (NYCHRL); *accord Campbell v. N.Y.C. Dep't of Educ.,* 160 N.Y.S.3d 12, 14 (1st Dep't 2021) (NYCHRL). Both statutes reject any requirement that the conduct be "severe or

pervasive" as under federal law. N.Y. Exec. Law § 296(1)(h); *Mihalik*, 715 F.3d at 113 (NYCHRL).

Here, no reasonable jury could conclude that Defendants subjected Plaintiff to a hostile work environment because of her protected characteristics. There is no record evidence that Plaintiff was "treated less well than other employees because of [a protected characteristic]." *See Williams*, 872 N.Y.S.2d at 39. Plaintiff's testimony that she overheard Dabas state that she does not like Hispanics does not change the analysis -- even under the liberal standards of the NYCHRL and amended NYSHRL, a "stray remark" and otherwise conclusory allegations do not suffice to survive summary judgment. *See Mejia v. T.N. 888 Eighth Ave. LLC*, 95 N.Y.S.3d 168, 170 (1st Dep't 2019) (NYCHRL and pre-amendment NYSHRL). Even under the liberal standards of the NYCHRL and NYSHRL, the hostile work environment claim fails.

**v. Other Theories of Discrimination**

As with the federal claims, the remaining claims of disparate treatment fail because the record does not support a prima facie case at step one of *McDonnell Douglas*. The record does not support an inference that Plaintiff's protected status played any role in the asserted mistreatment, even under the more liberal standards of the NYCHRL and amended NYSHRL. *See Mezinev*, 252 N.Y.S.3d at 148. The Third and Fifth Causes of Action survive as they relate to the 2022 hiring of Gosin as Director of Labor Relations, Field Operations.

**3. Disparate Impact (Fourth Cause of Action)**

The SAC asserts a claim for disparate impact under the NYSHRL but not the NYCHRL. Assuming that the "lenient standards of the NYCHRL" apply to this claim, the claim is dismissed for substantially the same reason as the federal claim -- i.e., the record does not support a prima facie case at step one of *McDonnell Douglas*. *See Allen v. City of New York*, No. 24-2589, 2025 WL 3152723, at *3 n.2 (2d Cir. Nov. 12, 2025) (summary order). To establish

disparate impact under the NYCHRL, a plaintiff must show "that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of [the NYCHRL]." N.Y.C. Admin. Code § 8-107(17)(a)(1); *Levin v. Yeshiva Univ.*, 754 N.E.2d 1099, 1102 (N.Y. 2001) ("A claim of discrimination . . . can be stated where a facially neutral policy or practice has a disparate impact on a protected group.").

The claims for disparate impact under the NYCHRL and NYSHRL fail because the record does not reflect a policy or practice that results in a disparate impact on the basis of protected status. *See Motta v. Glob. Contact Servs., Inc.*, 675 F. App'x 98, 100 (2d Cir. 2017) (summary order) (NYCHRL and pre-amendment NYSHRL) (affirming dismissal of complaint when plaintiffs had not "pointed to any facially-neutral policy . . . that falls more harshly on one group of employees than another"). The Fourth Cause of Action is dismissed.

**4. Retaliation (Seventh and Eighth Causes of Action)**

The NYSHRL and NYCHRL retaliation claims proceed for the same reasons as the federal claim, to the extent these claims survived the MTD Opinion. The NYSHRL and NYCHRL analysis is similar to Title VII but "more liberal": "[A] plaintiff claiming retaliation must demonstrate that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122-23 (2d Cir. 2024) (NYCHRL and assuming that amended NYSHRL, as opposed to pre-amendment NYSHRL, applies).

The MTD Opinion dismissed the NYSHRL retaliation claim to the extent it was based on the January 12, 2023, desk incident, the SIR investigation and Plaintiff's suspension pending that investigation. *Carrasco*, 2025 WL 1939052, at *7. The Seventh and Eighth Causes of Action

survive to the extent they are based on Plaintiff's twenty-day suspension following the SIR investigation and transfer to Staten Island.

**5. NYLL**

The NYLL claim for retaliation survives. Summary judgment is granted to Defendants on the New York Equal Pay Act claim.

**a. Retaliation (Ninth Cause of Action)**

The NYLL claim for retaliation survives for the same reasons as the other claims for retaliation. NYLL § 215 states that an employer may not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" based on a complaint that the employee asserts for violations of the chapter. N.Y. Lab. Law § 215(1)(a). As with the other retaliation claims, a plaintiff must show "(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Williams v. Harry's Nurses Registry, Inc.*, No. 24-34, 2025 WL 842041, at *3 (2d Cir. Mar. 18, 2025) (summary order) (NYLL); *see Neu v. Amelia U.S. LLC*, 208 N.Y.S.3d 183, 184-85 (1st Dep't 2024) (concluding prima facie case established when plaintiff engaged in protected activity and was fired less than a month later).

For the same reasons Plaintiffs' other retaliation claims survive, a reasonable jury could conclude that the SIR investigation, Plaintiff's suspensions during and following that investigation and Plaintiff's transfer to Staten Island were retaliatory in response to the EEOC Charge and Complaint. The Ninth Cause of Action survives to the extent it is based on this conduct.

**b. Unequal Pay (Tenth Cause of Action)**

Defendants' motion is granted on the New York Equal Pay Act claim because no reasonable jury could conclude that Plaintiff performed equal or substantially similar work as her asserted comparator.

Under the New York Equal Pay Act, Plaintiff must show that she was "paid a wage at a rate less than" a comparator outside of her protected classes for "equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions" or for "substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions." N.Y. Lab. Law § 194(1). When considering similarity, the factfinder must consider "education, training, job requirements, job responsibilities, hours worked, and similar working conditions." *Garrison v. Am. Sugar Refin., Inc.*, 789 F. Supp. 3d 291, 316 (S.D.N.Y. 2025) (New York Equal Pay Act), *appeal withdrawn*, No. 25-1769, 2025 WL 4065857 (2d Cir. Dec. 17, 2025). As discussed above, the record does not support a reasonable inference that Plaintiff and Bailey performed "equal" or "substantially similar work." N.Y. Lab. Law § 194(1). The Tenth Cause of Action is dismissed.

**6. Individual Liability**

The SAC asserts the city and state law claims against the Individual Defendants. Summary judgment is granted in part as set forth below.

Under the NYCHRL, individual employees are liable for discrimination "when those employees have some supervisory role over the victim of their discrimination." *Russell v. N.Y. Univ.*, 246 N.E.3d 868, 877 (N.Y. 2024). The NYSHRL does not create individual liability except under an aiding-and-abetting theory. *See id.* at 876 (noting that the NYCHRL "goes beyond the State HRL in providing for individual liability"); *Tolbert*, 790 F.3d at 434 n.3 ("The

NYSHRL provides for individual liability under an aiding-and-abetting theory . . . ."). NYLL § 215 creates individual liability. *See* N.Y. Lab. Law § 215(2)(a) (creating civil cause of action "against any employer or persons alleged to have violated" the section).

Summary judgment is granted to the Individual Defendants on the NYSHRL claims. The SAC does not assert claims against the Individual Defendants based on an aiding-and-abetting theory or otherwise reference an aiding-and-abetting theory of liability. A litigant may not assert new claims for the first time in opposing summary judgment. *See Zann Kwan*, 737 F.3d at 843; *Cheng v. Via Quadronno LLC*, No. 20 Civ. 8903, 2022 WL 17069800, at *6 (S.D.N.Y. Nov. 17, 2022).

Under the NYCHRL, a reasonable jury could find Defendant Abdelrahman liable for the failure to promote Plaintiff in 2022 because the jury could conclude that she had "some supervisory role" over Plaintiff at the time and participated in the discriminatory failure to promote, given her management-level roles in NYCTA's Office of Labor Relations. *See Russell*, 246 N.E.3d at 877. However, no reasonable jury could find that Defendant Gosin, who was not Plaintiff's supervisor until August 2022, had "some supervisory role" over Plaintiff at the time of the failure to promote. *See id.*

The NYCHRL and NYLL claims against Defendants Abdelrahman and Gosin for retaliation survive. A reasonable jury could conclude that each Defendant had "some supervisory role" over Plaintiff at the time of the asserted retaliation and participated in the retaliation. *Id.*

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. Summary judgment is granted in full as to the following causes of action:

- Disparate Treatment under Title VII (First Cause of Action);
- Disparate Impact under Title VII (Second Cause of Action);
- Disparate Impact under the NYSHRL (Fourth Cause of Action);
- Unequal Pay under the NYLL (Tenth Cause of Action).

Summary judgment is granted in part on the Third, Fifth, Sixth, Seventh, Eighth and Ninth Causes of Action, except as set forth below (i.e., the following claims survive for trial):

- Disparate Treatment under the NYSHRL and NYCHRL for the 2022 failure to promote against the Transit Defendants and, for the NYCHRL, Defendant Abdelrahman (Third and Fifth Causes of Action);
- Retaliation under Title VII and NYLL for the SIR investigation, Plaintiff's suspensions pending and following the investigation and Plaintiff's transfer to Staten Island against the Transit Defendants and, for the NYLL, against all Defendants (Sixth and Ninth Causes of Action);
- Retaliation under the NYSHRL and NYCHRL for events occurring after May 12, 2023, including Plaintiff's suspension following the investigation and Plaintiff's transfer to Staten Island against the Transit Defendants and, for the NYCHRL, against all Defendants (Seventh and Eighth Causes of Action).

The Clerk of Court is respectfully directed to close the motion at Dkt. 113.

Dated: September 23, 2026
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE